IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

GARY J. MARTINEZ,              )    CIV. NO. 16-00475 HG-RLP
                              )
          Plaintiff,          )
                              )
     vs.                      )
                              )
SEAN STACKLEY, Secretary of the)
Navy; JAMIE K. KALOWSKY, CMDR, )
Captain Pearl Harbor Navy     )
Shipyard and Intermediate     )
Maintenance Facility,         )
                              )
          Defendants.         )
                              )
_____)

**ORDER GRANTING MOTION FOR DISMISSAL AND SUMMARY JUDGMENT OF
DEFENDANTS SEAN STACKLEY, SECRETARY OF THE NAVY AND JAMIE K.
KALOWSKY (ECF No. 35)**

Plaintiff Gary J. Martinez has filed a form Complaint
against the Secretary of the United States Navy and Captain Jamie
Kalowsky, Commander of the Pearl Harbor Navy Shipyard.  The form
Complaint alleges federal claims of employment discrimination
based on Plaintiff's disability, race, national origin, and age.
Plaintiff also asserts that one of his former supervisors
violated his rights under the Privacy Act.

Plaintiff attached nearly 500 pages of documents to the form
Complaint, including hundreds of pages of hand written statements
by Plaintiff and Plaintiff's wife.

Plaintiff's filings are difficult to decipher and contain
unintelligible pleadings.  The Court construes Plaintiff's

pleadings liberally and, viewing the record in a light most favorable to Plaintiff, concludes that Plaintiff is not entitled to relief.

The Defendants' Motion for Dismissal and Summary Judgment (ECF No. 35) is **GRANTED**.

<u>**PROCEDURAL HISTORY**</u>

On August 26, 2016, Plaintiff filed the form Complaint along with more than five hundred pages of attachments.  (ECF No. 1).

On the same date, he filed an Application To Proceed In District Court Without Prepaying Fees and Costs.  (ECF No. 3).

On August 31, 2016, the Magistrate Judge issued an ORDER GRANTING PLAINTIFF'S APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES, DIRECTING SERVICE, AND DIRECTING THE CLERK'S OFFICE TO SEND PLAINTIFF A REQUEST FOR APPOINTMENT OF COUNSEL FORM.  (ECF No. 9).

On September 9, 2016, Plaintiff filed a REQUEST FOR APPOINTMENT OF COUNSEL UNDER THE CIVIL RIGHTS ACT OF 1964; 42 U.S.C. § 2000e-5(f)(1)(B).  (ECF No. 11).

On September 15, 2016, the Magistrate Judge issued a FINDINGS AND RECOMMENDATION TO DENY PLAINTIFF'S REQUEST FOR APPOINTMENT OF COUNSEL.  (ECF No. 14).

On October 5, 2016, Plaintiff filed an Objection to the Magistrate Judge's Findings and Recommendation.  (ECF No. 15).

On October 14, 2016, the Court issued an ORDER ADOPTING THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION, AS MODIFIED. (ECF No. 16).

On May 24, 2017, Defendants filed a MOTION FOR DISMISSAL AND SUMMARY JUDGMENT OF DEFENDANTS SEAN STACKLEY, SECRETARY OF THE NAVY AND JAMIE K. KALOWSKY and a Concise Statement of Facts in Support of their Motion. (ECF Nos. 35, 36).

On June 19, 2017, Plaintiff filed pleadings requesting an extension of time to respond to Defendants' Motion. (ECF Nos. 38, 39).

On June 20, 2017, the Court issued a Minute Order granting Plaintiff's request for an extension of time to file his Opposition. (ECF No. 40).

On July 31, 2017, Plaintiff filed a pleading entitled, "OPPOSITION TO THE MOTION FOR DISMISSAL AND SUMMARY JUDGEMENT [sic] OF DEFENDANTS SEAN STACKLEY, SECRETARY OF THE NAVY AND JAMIE K. KALOWSKY." (ECF No. 41).

On the same date, Plaintiff filed a pleading entitled, "CONCISE STATEMENT IN SUPPORT OF PLAINTIFF'S OPPOSITION TO THE MOTION FOR DISMISSAL AND SUMMARY JUDGEMENT [sic] OF DEFENDANTS SEAN STACKLEY, SECRETARY OF THE NAVY AND JAMIE K. KALOWSKY." (ECF No. 42).

On August 10, 2017, Defendants filed a REPLY MEMORANDUM IN SUPPORT OF MOTION FOR DISMISSAL AND SUMMARY JUDGMENT OF

DEFENDANTS SEAN STACKLEY, SECRETARY OF THE NAVY, AND JAMIE K. KALOWSKY. (ECF No. 43).

On November 3, 2017, Plaintiff filed a pleading entitled, "NO REPLY IN SUPPORT OF PLAINTIFF MOTION AND ANSWER TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT OR DISMISSAL FILED ON AUGUST 10, 2017 ALSO REQUEST FOR EXTENSION OF TIME TO REPLY TO COURT DECISION OF SUMMARY JUDGMENT." (ECF No. 44).

On December 22, 2017, the Court issued a Minute Order holding the scheduling deadlines in abeyance. (ECF No. 46).

On January 29, 2018, the Court issued a Minute Order granting Defendants' Motion for Dismissal and Summary Judgment and vacating the trial date and all deadlines. (ECF No. 48). This written order sets forth the basis for the summary decision issued in the January 29, 2018 Minute Order.

## BACKGROUND

Plaintiff Gary J. Martinez alleges that he is a sixty-one year old man, of Hispanic and American Indian heritage. Plaintiff's voluminous and difficult to decipher pleadings attempt to allege federal claims of employment discrimination and a violation of the Privacy Act.

Construing the pleadings liberally and in favor of the Plaintiff, the record sets forth the following facts:

**August 2014 Employment Agreement**

On August 14, 2014, Plaintiff Martinez signed an Employment Agreement with the Pearl Harbor Naval Shipyard and Intermediate Maintenance Facility to work in the position of "painter helper." (Employment Agreement dated August 14, 2014, attached as Ex. 3 to Def.'s Concise Statement of Facts ("CSF"), ECF No. 36-7). A painter helper is responsible for assisting painters at the Shipyard by suppling tools and work materials, preparing surfaces for painting, and performing sandblasting. (Painter Helper Job Description, attached as Ex. 2 to Def.'s CSF, ECF No. 36-6).

Plaintiff worked in Shop 71 at the Shipyard which is responsible for blasting old paint off of ships and submarines and for repainting them. (Declaration of Chad Candido, General Foreman at Pearl Harbor Naval Shipyard, ("Candido Decl.") at ¶ 2, ECF No. 36-1). About 85% of the Shop's work is done inside submarines and the remaining 15% of work is done off-hull, where items are removed from ships and are blasted and painted. (Id. at ¶¶ 1-3).

Plaintiff's employment as a painter helper was contingent on Plaintiff's ability to work in confined spaces. (Employment Agreement dated August 14, 2014, attached as Ex. 3 to Def.'s CSF, ECF No. 36-7). Plaintiff's Employment Agreement included fifteen separate numbered paragraphs explaining the requirements of the position, which Plaintiff was required to review and initial.

5

(Id.)  One of the paragraphs explained the nature of Plaintiff's
work in confined spaces, specifically in submarines.  The
paragraph, which was initialed by Plaintiff, provided:

> 2.  Confined Spaces — The majority of the shipyard's
> workforce assists with the repair of submarines.  Any
> FWS employee or waterfront support employee must be
> capable of performing work on submarines and in tight,
> enclosed or partially enclosed confined spaces.  If I
> am unable to perform duties on submarines and in tight,
> enclosed or partially enclosed confined spaces, my
> employment with PHNSY&IMF may be terminated during my
> probationary period or my removal from Federal service
> proposed once I have passed my probationary period.

(Id. at p. 2).

Plaintiff signed and initialed the Employment Agreement and
on September 28, 2014, he began work as a painter helper.  (Id.
at p. 3; Final Agency Decision dated May 24, 2016, at p. 2, ECF
No. 1-5).

**January 2015 Accident On The USS Asheville And Temporary
Assignment To The Corrosion Control Center**

Plaintiff claims that on January 6, 2015, while he was
working as a painter helper on a submarine project on the USS
Asheville, he suffered an injury.  (Navy Equal Employment Office
Specialist Carla Kishimori's EEO Counselor's Report dated August
10, 2015, at p. 3, attached to Pla.'s Complaint, ECF No. 1-9, pp.
4-14).  Plaintiff alleges that his head was sucked into an
uncovered pipe, causing him to lose his helmet and headlamp.
(Id.)

6

Plaintiff alleges that following the incident, on January 21, 2015, his primary supervisor, Mr. Jonathan Andres, assigned Plaintiff to report back to the USS Asheville project to recover grit in the ship's tank. (Id.) Plaintiff stated that he experienced vertigo, anxiety, nausea, and vomiting as a result. (Id.)

Plaintiff claims that a few weeks later, on February 9, 2015, he was informed that he was to report to the Shipyard's Corrosion Control Center where he would be completing painting and blasting tasks off-ship. (Id.) Plaintiff believed that the assignment was to keep him off of the USS Asheville project after he had experienced vertigo and anxiety on January 21, 2015. (Id.) Plaintiff worked in the Corrosion Control Center for 106 days without incident. (Id.)

**May 2015 Reassignment Back To The USS Asheville**

On May 26, 2015, General Foreman Candido reassigned Plaintiff Martinez and three or four other employees back to the USS Asheville project. (Candido Decl. at ¶ 6, ECF No. 36-1).

Two days later, on May 28, 2015, Plaintiff objected to his reassignment back to the USS Asheville project and he submitted a letter request to General Foreman Candido. (Letter from Plaintiff to Foreman Candido dated May 28, 2015, attached as Ex. 5 to Def.'s CSF, ECF No. 36-9). The Letter was titled as a

"Request for Reasonable Accommodations."  (Id.)  The Letter asked

that Plaintiff be permanently reassigned to work off-ship,

exclusively in the Corrosion Control Center.  (Id.)

Foreman Candido referred Plaintiff's request to the Navy

Equal Employment Opportunity Office.  (Declaration of Lacy Lynn,

Supervisory Equal Employment Opportunity Specialist with the U.S.

Navy, ("Lynn Decl.") at ¶ 2, ECF No. 36-3).

**Plaintiff's May 27, 2015 Doctor's Note For Claustrophobia**

Also on May 28, 2015, Plaintiff submitted a doctor's note to

Foreman Candido.  (Candido Decl. at ¶ 6, ECF No. 36-1). The Note

was dated May 27, 2015, and the entirety of the note stated, as

follows:

> I have seen the above mentioned patient today for
> anxiety.  Patient should have Modified duty, Patient is
> suffering from Claustrophobia, should not work in tight
> spaces.

(Note from David Samsami, M.D., dated May 27, 2015, attached

as Ex. 4 to Def.'s CSF, ECF No. 36-8).

After he received the medical note, General Foreman Candido

gave it to the Process Manager for the Paint Shop, Christopher

Byas.  (Declaration of Christopher Byas at ¶ 4, attached to

Def.'s CSF, ECF No. 36-4).  Process Manager Byas then gave a copy

of the doctor's note to LeVaughn Carter, the steward of the

Painters' Union to which Plaintiff belonged.  (Id. at ¶ 3).

Process Manager Byas was later reprimanded by the Navy for giving

8

the letter to the union steward. (Privacy Act Letter, attached
to Pla.'s CSF as Ex. 3, ECF No. 42-3).

**Navy's Review of Plaintiff's Reasonable Accommodation Request**

Following Plaintiff's May 28, 2015 Reasonable Accommodation
Request Letter, the Navy Equal Employment Opportunity Office
engaged in meetings and interviews with Plaintiff and his co-
workers and convened a Panel to review his request for
accommodations. (Report of Marie E. Robichau, Investigator for
the Navy Equal Employment Opportunity Office, at p. 3, attached
as Ex. 1 to Def.'s CSF, ECF No. 36-5).

Plaintiff claims that on June 4, 2015, his primary
supervisor Herman Carson gave Plaintiff a Medical Referral form
and directed him to the Naval Health Clinic Hawaii for a medical
exam. (Final Agency Decision at p. 6, ECF No. 1-5). Plaintiff
did not comply. (Id.)

Plaintiff met several times with the Navy Equal Employment
Opportunity staff and stated that he did not want to go through
with the reasonable accommodations process but did not want to
put the statement in writing. (Lynn Decl. at ¶ 5, ECF No. 36-3).

The Reasonable Accommodations Panel determined that
Plaintiff could not perform the essential functions of his
painter helper position because he was unable to work in confined
spaces. (Lynn Decl. at ¶ 4, ECF No. 36-3). The Panel's

recommendation was to offer Plaintiff job reassignment.  (Id.)

**July 2015 Plaintiff Declined Job Reassignment As A Reasonable Accommodation**

On July 2, 2015, Shop Superintendent Vince Yokoyama sent Plaintiff a letter entitled, "OPTION OF A REASSIGNMENT AS AN ACCOMMODATION."  (Letter from Vince Yokoyama to Plaintiff dated July 2, 2015, attached as Ex. 7 to Def.'s CSF, ECF No. 36-11).

The July 2, 2015 letter explained to Plaintiff that he could not be accommodated in his current position of painter helper because the position required that work be performed in confined spaces on submarines, which was contrary to his doctor's note dated May 27, 2015.  (Id.)  The July 2, 2015 letter asked Plaintiff if he wished to be considered for reassignment to a different position where he could perform the essential functions and meet the job-related requirements of a new position.  (Id.)

On July 13, 2015, Plaintiff sent a letter rejecting the Navy's July 2, 2015 letter offering the possibility of job reassignment as an option for a reasonable accommodation. (Letter from Plaintiff to Shop Superintendent Yokoyama, dated July 13, 2015, attached as Ex. 8 to Def.'s CSF, ECF No. 36-12). Plaintiff stated in his July 13, 2015 letter that he did not want to be reassigned to another position but wished to perform work as a painter helper exclusively in the Corrosion Control Center. (Id.)

Plaintiff also stated in the letter that his claustrophobia may be cured or treated and that he would like to continue with light duty work in hopes that he would recover from his medical condition. (Id. at p. 2).

The Navy requested medical information from Plaintiff in order to assess his ability to return to work. (Declaration of Process Manager Christopher Byas, ("Byas Decl.") at ¶ 4, ECF No. 36-4; Request for Detailed Medical Information, dated August 18, 2015, attached as Ex. 9 to Def.'s CSF, ECF No. 36-13).

Plaintiff never provided the requested medical information that would allow him to return to work. (Byas Decl. at ¶ 4, ECF No. 36-4).

Plaintiff submitted doctor's notes that simply stated that Plaintiff had claustrophobia, anxiety, and post-traumatic stress disorder and provided no additional information as to when Plaintiff might return to full service work or if his condition was expected to improve. (Doctor's Note dated August 28, 2015, attached to Pla.'s Complaint at ECF No. 1-11, p. 2; Doctor's Note dated September 18, 2015, at ECF No. 1-11, p. 18; Doctor's Note dated September 30, 2015, at ECF No. 1-11, p. 20; Doctor's Note dated October 14, 2015, at ECF No. 1-11, p. 34; Doctor's Note dated October 19, 2015, at ECF No. 1-11, p. 48; Doctor's Note dated December 14, 2015, at ECF No. 1-13, p. 4; Doctor's Note dated February 12, 2016, at ECF No. 1-15, p. 28).

**Review of Plaintiff's July 2015 Complaint of Discrimination With The Navy Equal Employment Opportunity Office**

Three days after Plaintiff rejected the Navy's offer for job reassignment, on July 16, 2015, Plaintiff made a "Formal Complaint of Discrimination" with the Navy Equal Employment Opportunity Office. (Plaintiff's Agency Complaint dated July 16, 2015, attached to Pla.'s Complaint, ECF No. 1-2).

In the Agency Complaint, Plaintiff alleged discrimination and a hostile work environment on the basis of his race, national origin, color, disability, and for retaliation. (Id. at p. 2). Plaintiff also complained that one of his doctor's notes was inappropriately distributed. (Id.)

From December 21, 2015 to February 12, 2016, the Navy Equal Employment Opportunity Office conducted an investigation into Plaintiff's discrimination complaint. (Report of Marie E. Robichau, Investigator for the Navy Equal Employment Opportunity Office, at p. 3, attached as Ex. 1 to Def.'s CSF, ECF No. 36-5).

**February 2016 Results of EEO Investigation**

On February 22, 2016, the results of the investigation were mailed to Plaintiff. (Notice of Rights Letter from EEO to Plaintiff dated February 24, 2016, attached to Pla.'s Complaint, ECF No. 1-3). The Navy Equal Employment Opportunity Office communication provided notice to Plaintiff that he could seek a

Final Agency Decision from its investigation or opt to have a hearing and a decision from an Administrative Judge with the United States Equal Employment Opportunity Commission.  (Id.)

On February 29, 2016, Plaintiff requested a Final Administrative Decision from the Navy Equal Employment Opportunity Office.  (Plaintiff's Request Letter dated February 29, 2016, attached to Pla.'s Complaint, ECF No. 1-4 at p. 12).

**Navy Equal Employment Opportunity Office's Final Agency Decision**

On May 24, 2016, the Navy Equal Employment Opportunity Office issued its Final Agency Decision.  (Final Agency Decision, dated May 24, 2016, attached to Pla.'s Complaint, ECF No. 1-5). The agency found that Plaintiff was not entitled to relief.  (Id. at p. 9).

Following the Final Agency Decision, Plaintiff filed his Complaint in this Court on August 26, 2016.  (ECF No. 1).

**STANDARD OF REVIEW**

**Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(6)**

A court must dismiss a complaint as a matter of law pursuant to Federal Rule of Civil Procedure 12(b)(6) where it fails "to state a claim upon which relief can be granted."  Rule (8)(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled

to relief." When considering a Rule 12(b)(6) motion to dismiss, the Court must presume all allegations of material fact to be true and draw all reasonable inferences in favor of the non-moving party. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. Id. at 699. The Court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

In Bell Atl. Corp. v. Twombly, the United States Supreme Court addressed the pleading standards under the Federal Rules of Civil Procedure in the anti-trust context. 550 U.S. 544 (2007). The Supreme Court stated that Rule 8 of the Federal Rules of Civil Procedure "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action," and that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

Most recently, in Ashcroft v. Iqbal, the Supreme Court clarified that the principles announced in Twombly are applicable in all civil cases. 129 S.Ct. 1937 (2009). The Court stated that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.

at 1949 (citing Twombly, 550 U.S. at 555).  To survive a motion
to dismiss, a complaint must contain sufficient factual matter,
accepted as true, to state a claim to relief that is plausible on
its face.  Id. (quoting Twombly, 550 U.S. at 570).  A claim has
facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged.  Id. (citing
Twombly, 550 U.S. at 556).  The plausibility standard is not akin
to a "probability requirement," but it asks for more than a sheer
possibility that a defendant has acted unlawfully.  Id. (quoting
Twombly, 550 U.S. at 556).  Where a complaint pleads facts that
are "merely consistent with" a defendant's liability, it "stops
short of the line between possibility and plausibility of
'entitlement to relief.'"  Id. (quoting Twombly, 550 U.S.
at 557).

     The complaint "must contain sufficient allegations of
underlying facts to give fair notice and to enable the opposing
party to defend itself effectively" and "must plausibly suggest
an entitlement to relief, such that it is not unfair to require
the opposing party to be subjected to the expense of discovery
and continued litigation."  AE ex rel. Hernandez v. Cnty of
Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (internal quotations
omitted).

15

**Motion For Summary Judgment Pursuant to Fed. R. Civ. P. 56**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. The moving party need not produce any evidence at all on matters for which it does not have the burden of proof. Celotex, 477 U.S. at 325. The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. That burden is met by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. Id.

If the moving party meets its burden, then the opposing

party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979). The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party. State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989). Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630. The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994). When the non-moving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an

issue of material fact.  <u>Hansen v. United States</u>, 7 F.3d 137, 138

(9th Cir. 1993); <u>see</u> <u>also</u> <u>National Steel Corp. v. Golden Eagle</u>

<u>Ins. Co.</u>, 121 F.3d 496, 502 (9th Cir. 1997).

## ANALYSIS

## I.   Plaintiff's Complaint Is Construed Liberally

The Court construes Plaintiff's pro se pleadings liberally.

<u>Eldridge v. Block</u>, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The

Supreme Court has instructed the federal courts to liberally

construe the 'inartful pleading' of pro se litigants." (citing

<u>Boag v. MacDougall</u>, 454 U.S. 364, 365 (1982) (per curiam))).

Even liberally construed, Plaintiff's Complaint and its

voluminous, unorganized attachments are confusing, and in many

instances incoherent and unintelligible.  Plaintiff appears to

assert three causes of action:

  (1)  Failure to accommodate Plaintiff's disability in
       violation of the Rehabilitation Act, 29 U.S.C. § 794;

  (2)  Hostile work environment on the basis of Plaintiff's
       race, national origin, color, and age in violation of
       Title VII of the Civil Rights Act of 1964, 42 U.S.C. §
       2000e-2 (a)(1); and,

  (3)  Unauthorized release of Plaintiff's medical information
       in violation of the Privacy Act, 5 U.S.C. § 552a.

## II.  Plaintiff's Claims Against Captain Kalowsky

It is not clear what claims Plaintiff attempts to bring

against Captain Kalowsky, Commander of the Pearl Harbor Navy
Shipyard.  In Plaintiff's Complaint, he writes that Kalowsky
"[d]idn't follow his own ANTI-HARASSMENT Policy" and "Kalowsky's
continued abuse and outrageous conduct" created a "toxic work
environment."  (Complaint at pp. 9, 11, ECF No. 1).

    To the extent Plaintiff attempts to bring his employment
discrimination claims against Captain Kalowsky, Title VII of the
Civil Rights Act of 1964 does not impose liability on individual
employees, including managers and supervisors.  See 42 U.S.C. §
2000e-2; Pink v. Modoc Indian Health Project, Inc., 157 F.3d
1185, 1189 (9th Cir. 1998).  Individuals may not be sued under
Title VII in their individual capacities.

    To the extent that Plaintiff pleads non-Title VII claims
against Kalowsky, the Civil Service Reform Act of 1978, 5 U.S.C.
§ 1101 et seq. (hereafter "CSRA") exclusively provides a remedial
scheme through which federal employees can challenge their
supervisors' prohibited personnel practices.  Mangano v. United
States, 529 F.3d 1243, 1247-48 (9th Cir. 2008) (quoting 5 U.S.C.
§ 2302); see also Rivera v. United States, 924 F.2d 948, 951 (9th
Cir. 1991).  Plaintiff did not file a claim against Defendant
Kalowsky with the Merit Systems Protection Board nor with the
Navy Equal Employment Opportunity Office.  He is required to
exhaust his administrative remedies before he would be allowed to
bring such a claim in this Court.

Defendants' Motion to Dismiss as to the claims against Captain Kalowsky is **GRANTED.**

Plaintiff's claims against Captain Kalowsky are **DISMISSED WITH PREJUDICE.**

## III. Plaintiff's Claims Against the Secretary of the Navy

### A.     Plaintiff's Employment Discrimination Claims

Plaintiff properly named the Secretary of the Navy in his official capacity for his employment discrimination claims pursuant to the Final Agency Decision of the Navy's Equal Employment Opportunity Office.  (See Final Agency Decision at p. 11-12, ECF No. 1-5, stating that "[o]nly the Secretary of the Navy is a proper defendant under Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 2000e-16(c)").

Plaintiff seeks to pursue claims for failure to accommodate pursuant to the Rehabilitation Act and for hostile work environment in violation of Title VII of the Civil Rights Act.

#### 1.    Exhaustion

The Rehabilitation Act and Title VII of the Civil Rights Act of 1964 require an employee to exhaust his administrative remedies as a precondition to filing suit in court.  Vinieratos v. United States, 939 F.2d 762, 768 n.5 (9th Cir. 1991).

A federal executive branch employee who elects to pursue a

discrimination claim pursuant to either the Rehabilitation Act or Title VII of the Civil Rights Act must first consult with an Equal Employment Opportunity counselor in the agency that allegedly discriminated against him.  29 C.F.R. §§ 1614.102(b)(6), 1614.105(a); Brown v. Gen. Servs. Admin., 425 U.S. 820, 832 (1976); Boyd v. U.S. Postal Serv., 752 F.2d 410, 413-14 (9th Cir. 1985).

If dissatisfied with the outcome of the counseling, the employee must file a complaint with the agency's Equal Employment Opportunity Office.  29 C.F.R. § 1614.106.  The employee may then seek a Final Agency Decision from the agency's Equal Employment Opportunity Office or seek review by an Administrative Judge of the United States Equal Employment Opportunity Commission.  29 C.F.R. § 1614.110.

The employee may elect further administrative review with the United States Equal Employment Opportunity Commission or file suit in federal court.  See 29 C.F.R. §§ 1614.401, 407; Brown, 425 U.S. at 832.  The claimant may seek de novo review of the agency's final agency decision by filing a civil action in district court within 90 days.  Farrell v. Principi, 366 F.3d 1066, 1067 (9th Cir. 2004).

The purpose of the exhaustion requirement is to provide federal agencies with the opportunity to first resolve the complaint informally.  Jasch v. Potter, 302 F.3d 1092, 1094 (9th

Cir. 2002).  A plaintiff is not permitted to bring new
allegations in his judicial complaint that were not included in
the original Equal Employment Opportunity agency complaint unless
they are reasonably related to the same charge.  Lyons v.
England, 307 F.3d 1092, 1104 (9th Cir. 2002) (quoting Green v.
L.A. Cnty. Superintendent of Schs., 883 F.2d 1472, 1475–76 (9th
Cir. 1989)); McComber v. Potter, 2006 WL 2380686, *3 (W.D. Wash.
Aug. 16, 2006) (finding the plaintiff was precluded from adding a
claim of constructive discharge in federal court because it was
not exhausted before the federal agency).

Here, the Navy's Equal Employment Opportunity Office Final
Agency Decision found that Plaintiff's exhausted employment
discrimination claims were limited to the following allegations:

(1)  On May 26, 2015, General Foreman Candido sent Plaintiff
back to the USS Asheville project after Plaintiff had
been reassigned to the Corrosion Control Center for 106
days;

(2)  On May 28, 2015, General Foreman Candido told Plaintiff
to report to Supervisor Herman Carson after Plaintiff
provided Candido with a letter requesting a reasonable
accommodation;

(3)  On June 1, 2015, Process Manager Christopher Byas gave
Union Steward LeVaughn Carter a folder containing
Plaintiff's doctor's note;

(4)  On June 1, 2015, General Foreman Candido told Union
Steward Carter that Plaintiff was a "liability"
whenever he was assigned and ordered Plaintiff to
report to the Navy's Equal Employment Opportunity
Office to discuss his request for a reasonable
accommodation with staff where he was informed the
process was voluntary;

(5)    On June 4, 2015, Supervisor Carson gave Plaintiff a
       Medical Referral form and directed him to the Naval
       Health Clinic Hawaii for a medical exam;

(6)    On June 9, 2015, General Foreman Candido told Plaintiff
       "you are a liability";

(7)    On July 7, 2015, Shop Superintendent Vince Yokoyama and
       Equal Employment Opportunity Specialist Lacy Lynn
       issued Plaintiff an OPTION OF A REASSIGNMENT AS AN
       ACCOMMODATION letter;

(8)    On July 15, 2015, Plaintiff had to bring a doctor's
       note to work because Supervisor Carson did not return
       Plaintiff's phone call.

Here, the Court finds that Plaintiff exhausted his hostile
work environment claim in violation of Title VII of the Civil
Rights Act of 1964 and his failure to accommodate claim in
violation of the Rehabilitation Act.

Plaintiff's Complaint, however, contains hundreds of
handwritten documents from both him and his wife that list
incidents and claims that were never presented to the Navy Equal
Employment Opportunity Office.  The Court's review is limited to
the claims that were exhausted before the Navy.  To the extent
Plaintiff asserts incidents and claims that are not reasonably
related to the Final Agency Decision, Plaintiff failed to exhaust
his administrative remedies on such claims.

## 2.    Hostile Work Environment Claim

Title VII of the Civil Rights Act of 1964 guarantees
employees the right to be free from a hostile work environment.

23

The statute provides, in relevant part:

> It shall be unlawful employment practice for an
> employer ... to discharge any individual, or otherwise
> to discriminate against any individual with respect to
> his compensation, terms, conditions, or privileges of
> employment, because of such individual's race, color,
> religion, sex, or national origin.

42 U.S.C. § 2000e-2 (a)(1)(2006).

A hostile work environment is one that is permeated with discriminatory intimidation, ridicule, and insult, that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65-67 (1986)).

In determining whether a hostile work environment existed, the Court must consider the totality of the circumstances. Relevant factors include the frequency of the discriminatory conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating or merely offensive, and whether the conduct unreasonably interferes with the employee's work performance. Harris, 510 U.S. at 23.

Construing the record above in a light most favorable to Plaintiff, both before and after the agency's investigation was concluded, Plaintiff has not described any severe or pervasive conduct that would support a hostile work environment claim.

Plaintiff claims that General Foreman Candido referred to him as a liability. Offending an employee through an isolated

24

comment does not support a hostile work environment claim.
McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1113 (9th Cir. 2004).
Plaintiff has not pointed to any racial slurs, ageist remarks,
racially derogatory acts, physical threats or violence that would
support a hostile work environment claim.  Id. at 1113-18.  There
is no evidence in the record of any verbal or physical conduct
that was directed at Plaintiff's race or age.  Vasquez v. County
of Los Angeles, 349 F.3d 634, 642-43 (9th Cir. 2003).

Defendants' requests for medical documentation do not
constitute harassment due to Plaintiff's medical condition.
Rather, the medical information was required to evaluate
Plaintiff's reasonable accommodation request and assess his
ability to return to work.  (Final Agency Decision at p. 6, ECF
No. 1-5).  There is no evidence to support a claim that Plaintiff
was subject to an objectively abusive hostile work environment.
Freitag v. Ayers, 468 F.3d 528, 539 (9th Cir. 2006).

Defendants' Motion for Summary Judgment as to Plaintiff's
hostile work environment claim is **GRANTED.**

### 3.    Failure To Accommodate Claim

Federal employees may make a disability discrimination claim
pursuant to Section 501 of the Rehabilitation Act, 29 U.S.C. §
791, which incorporates the types of discrimination claims
available under the Americans with Disabilities Act.  Boyd, 752

25

F.2d at 413-14.

To state a prima facie case for failure to accommodate a
disability, a plaintiff must show:

(1) he is disabled;

(2) he is a qualified individual who can perform the
    essential functions of his job either with or without
    reasonable accommodations; and,

(3) he suffered an adverse employment action because of his
    disability.

Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233,
1237 (9th Cir. 2012).

### (1)  Disabled

For purposes of the Motion, the Court assumes that Plaintiff
was disabled when he was diagnosed with claustrophobia, anxiety,
and post-traumatic stress.

Plaintiff is unable to establish a prima facie case,
however, because he cannot demonstrate that he was a qualified
individual who was able to perform the essential functions of his
painter helper position with or without a reasonable
accommodation following his diagnosis in May 2015.

### (2)  Qualified Individual

To determine if an individual is qualified for a position,
the Court examines if the individual satisfied the requisite
skill, experience, education, and other job-related requirements

of the position.  The Court then considers if the individual can perform the essential functions with or without a reasonable accommodation.  Bates v. United Parcel Svc, Inc., 511 F.3d 974, 990-91 (9th Cir. 2007) (en banc).  The employer has the burden of establishing the essential functions of the position.  Id.

### a.    Essential Functions

Here, Defendants have produced Plaintiff's August 14, 2014 Employment Agreement, which Plaintiff signed and initialed. (Pla.'s Employment Agreement dated August 14, 2014, attached as Ex. 3 to Def.'s CSF, ECF No. 36-7).  The Employment Agreement sets forth that working in confined spaces is an essential function of the painter helper position.  The Agreement sets forth that failure to be able to work in "tight, enclosed or partially enclosed confined spaces" may result in termination. Id.

There is no dispute that Plaintiff was aware that the position required him to work in confined spaces as he specifically acknowledged and initialed the paragraph that set forth the requirement for working in confined spaces.  The paragraph provides:

> 2. Confined Spaces — The majority of the shipyard's workforce assists with the repair of submarines.  Any [Federal Wage System] employee or waterfront support employee must be capable of performing work on submarines and in tight, enclosed or partially enclosed confined spaces.  If I am unable to perform duties on

submarines and in tight, enclosed or partially enclosed
confined spaces, my employment with PHNSY & IMF may be
terminated during my probationary period or my removal
from Federal service proposed once I have passed my
probationary period.

(Id.)

Defendants also provided the written job description for the
painter helper position. (Candido Decl. at ¶ 3, ECF No. 36-1;
Written Job Description for Painter Helper, attached as Ex. 2 to
Def.'s CSF, ECF No. 36-6). The job description explains that the
position's requirements include frequent sitting, kneeling,
crouching, stooping, climbing, and working in cramped or awkward
positions. (Painter Helper Job Summary at pp. 147-48, attached
as Ex. 2 to Def.'s CSF, ECF No. 36-6).

General Foreman Candido provided a Declaration and explained
that 85% of a painter helper's work is done aboard submarines
with the remaining 15% spent off-ship. (Candido Decl. at  ¶ 2,
ECF No. 36-1). The Navy Equal Employment Opportunity Office
convened a Reasonable Accommodations Panel that conducted its own
evaluation and determined that working in confined spaces is an
essential function of the painter helper position. (Declaration
of Darrin Wataoka at ¶¶ 1-2, ECF No. 36-2; Documentation of
Essential Functions of Position, attached as Ex. 6 to Def.'s CSF,
ECF No. 36-10).

Plaintiff has not provided any evidence to dispute that
working in confined spaces is an essential function of the

painter helper position.  Plaintiff does not dispute that his claustrophobia and anxiety prevented him from working in confined spaces and performing the essential functions of the painter helper position.

### b.    Reasonable Accommodation

On May 28, 2015, Plaintiff submitted a request for a reasonable accommodation.  (Plaintiff's Request for Reasonable Accommodations, attached as Ex. 5 to Def.'s CSF, ECF No. 36-9).  Plaintiff requested to be assigned permanently to the Corrosion Control Center as a painter helper and to only perform work outside of the submarines.  (Id. at p. 103).

A reasonable accommodation is defined as modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position.  29 C.F.R. § 1630.2(o)(1)(ii).  The employee bears the burden of showing the existence of a reasonable accommodation that would have enabled him to perform the essential functions of the position.  Dark v. Curry Cnty., 451 F.3d 1078, 1088 (9th Cir. 2006).

Plaintiff has failed to demonstrate that a reasonable accommodation exists that would have allowed him to work in the

position as painter helper.  See Eshaya v. Boeing Co., 118 Fed.
Appx. 159, 160 (9th Cir. 2004)(finding that a claustrophobic
flight mechanic could not perform the essential functions of his
position).

General Foreman Candido explained that it was not reasonably
possible to accommodate Plaintiff to work only in the Corrosion
Control Center as he had requested.  General Foreman Candido
explained that almost all the work painter helpers are assigned
to is on submarines that involves working in confined spaces.
(Candido Decl. at ¶ 3, ECF No. 36-1).  Candido stated,

> I could not assign him full time to the abrasive
> blasting task or to the CCC because no one is assigned
> permanently to the CCC, much less to any one job in the
> CCC.  Painters and Painter Helpers rotate in to and out
> of the CCC as necessary based on the workload.
> Although some employees (not Painter Helpers) have been
> working in the CCC long term, even those employees are
> sometimes called away when their skills are needed
> elsewhere.  Typically, only 8-10 of employees are
> assigned to the CCC at any one time.  At times there
> are no Painter Helpers assigned to the CCC.
> (Id. at ¶ 8).

An employer is not obligated to provide an employee the
exact accommodation he requests or prefers, the employer need
only provide some reasonable accommodation.  Zivkovic v. So. Cal.
Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002); see US Airways,
Inc. v. Barnett, 535 U.S. 391, 406 (2002).

Plaintiff requested an accommodation that was not reasonable
and instead requested an entirely new position that would not
require him to perform the essential functions of a painter

helper.  The Navy was under no obligation to create a new
position to accommodate Plaintiff.  Wellington v. Lyon Cty. Sch.
Dist., 187 F.3d 1150, 1155 (9th Cir. 1999).

The Navy attempted to find a reasonable accommodation for
Plaintiff but he refused to engage in the interactive process
after he made his request for the specific accommodation that he
wanted.

The employer has an obligation to engage in an interactive
process with the employee to identify and implement appropriate
reasonable accommodations for an employee's disability.  Humphrey
v. Mem'l Hosps. Ass'n, 239 F.3d 1128, 1137 (9th Cir. 2001).

After Plaintiff sent a letter on May 28, 2015, requesting
the accommodation to work exclusively in the Corrosion Control
Center, the Navy initiated the interactive process and assembled
a Reasonable Accommodations Panel to evaluate the request.  (Lynn
Decl. at ¶¶ 1-3, ECF No. 36-3).  Navy Equal Employment
Opportunity Specialist Lacy Lynn explained that throughout the
process, she and her staff met with Plaintiff multiple times to
explain the process and "on several occasions he stated orally
that he did not want to go through the [Reasonable
Accommodations] process, but declined to put the statement in
writing."  (Id. at ¶ 5).

On July 2, 2015, the Reasonable Accommodations Panel offered
Plaintiff the option of reassignment as a reasonable

accommodation.  (Offer of Reassignment as Reasonable Accommodation Letter from Vince Yokoyama to Plaintiff dated July 2, 2015, attached as Ex. 7 to Def.'s CSF, ECF No. 36-11).

The offer of reassignment constituted a reasonable accommodation because there was no reasonable accommodation that would allow Plaintiff to perform the essential function of the painter helper position.  Reza v. Int'l Game Tech., 351 Fed. Appx. 188, 190 (9th Cir. 2009).

Plaintiff rejected the Navy's offer for reasonable accommodations in writing on July 13, 2015.  (Letter from Plaintiff to Shop Superintendent Yokoyama, dated July 13, 2015, attached as Ex. 8 to Def.'s CSF, ECF No. 36-12).

Plaintiff had a duty to engage in the interactive process. Allen v. Pacific Bell, 348 F.3d 1113, 1115 (9th Cir. 2003) (per curiam).  Good faith participation in the process is a continuing obligation that may not be exhausted by one effort.  Humphrey, 239 F.3d at 1138.

Plaintiff refused to continue to engage in the process and instead insisted on an accommodation that was not reasonable. Allen, 348 F.3d at 1114-15.  Plaintiff was provided the option of seeking reassignment and he refused the offer.  The Navy was not liable for the breakdown in the interactive process.  Zivkovic, 302 F.3d 1080 at 1089; Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 742 (9th Cir. 2011).

The Navy continued to seek information from Plaintiff in order to assess his medical limitations. The Navy requested medical information from Plaintiff in order to assess his ability to return to full duty work. (Byas Decl. at ¶ 4, ECF No. 36-4; Request for Detailed Medical Information, dated August 18, 2015, attached as Ex. 9 to Def.'s CSF, ECF No. 36-13). Plaintiff never provided the requested medical information but only submitted conclusory doctor's notes that stated that he had claustrophobia, anxiety, and post-traumatic stress. (Byas Decl. at ¶ 4, ECF No. 36-4; Doctor's Notes at pp. 2, 18, 20, 34, 48 of ECF No. 1-11).

The Navy was not required to engage any further in the interactive process. <u>Allen</u>, 348 F.3d at 1114-15; <u>Templeton v. Neodata Srvs., Inc.</u>, 162 F.3d 617, 619 (10th Cir. 1998).

Defendants' Motion for Summary Judgment as to Plaintiff's Rehabilitation Act claim is **GRANTED.**

## B.  Plaintiff's Privacy Act Claim

The Privacy Act, 5 U.S.C. § 552a, governs the disclosure of, access to, and amendment of records that are maintained by federal agencies, including the Navy. <u>Lane v. Dep't of Interior</u>, 523 F.3d 1128, 1138-39 (9th Cir. 2008); <u>Baker v. Dep't of Navy</u>, 814 F.2d 1381, 1383 (9th Cir. 1987).

A successful claim under the Privacy Act requires a showing that:

(1) the agency disclosed information contained within a system of records;

(2) the disclosure was improper;

(3) the disclosure was intentional or willful; and,

(4) the plaintiff was adversely affected by the disclosure.

Tungjunyatham v. Johanns, 500 Fed. Appx. 686, 689 (9th Cir. 2012) (citing Swenson v. U.S. Postal Service, 890 F.2d 1075, 1077 (9th Cir. 1989)).

To recover from a Privacy Act claim, plaintiffs must be able to show actual damages. Al-Haramain Islamic Found., Inc. v. Obama, 705 F.3d 845, 850 (9th Cir. 2012) (citing 5 U.S.C. § 552a(g)(4)(A), "the United States shall be liable to [an] individual in an amount equal to the sum of ... actual damages"). Sovereign immunity prevents recovery for mental or emotional distress because the Privacy Act "[did] not unequivocally authorize an award of damages for mental or emotional distress." Id. (quoting F.A.A. v. Cooper, 566 U.S. 284 at 304 (2012)).

Medical records disclosed by an agency have been found to constitute information subject to the Privacy Act. McLeod v. Dep't of Veterans Affairs, 43 Fed. Appx. 70, 71 (9th Cir. 2002).

Christopher Byas, Process Manager for the Paint Shop at the Pearl Harbor Shipyard, was informed by General Foreman Candido that Plaintiff had requested a reasonable accommodation. (Byas Decl. at ¶ 2, ECF No. 36-4). Byas was also given a note from Plaintiff's physician diagnosing Plaintiff with claustrophobia.

(Id.)  Byas gave the doctor's note to LeVaughn Carter, the
steward for the Painters' Union to which Plaintiff belonged.
(Id. at ¶ 3).  Byas states that he did this "because [he] thought
Carter was authorized to receive it to assist Martinez in
understanding the reasonable accommodation process.  (Id.)

A separate investigation conducted by the Navy concluded
that Byas was in violation of the Privacy Act when he disclosed
the doctor's note to Carter.  (Byas Decl. at ¶ 4, attached to
Def.'s CSF, ECF No. 36-4; Privacy Act Letter, attached to Pla.'s
CSF as Ex. 3, ECF No. 42-3).

Plaintiff alleges that the disclosure of his doctor's note
to Carter has caused him to experience post-traumatic stress
disorder and anxiety.  (Complaint at p. 11, ECF No. 1).

Plaintiff can only claim damages for emotional distress from
the Government when it has not waived sovereign immunity from
liability for such harms.  Al-Haramain Islamic Found., 705 F.3d
at 850.  The United States Supreme Court has held that the
Privacy Act's waiver of sovereign immunity is limited to proven
pecuniary or economic harm.  F.A.A. v. Cooper, 566 U.S. 284, 299
(2012).  The waiver does not extend to Plaintiff's request for
emotional distress damages.

Plaintiff's Privacy Act claim must fail as a matter of law
and Defendants' Motion for Summary Judgment is **GRANTED**.

**CONCLUSION**

Defendant's Motion for Dismissal and Summary Judgment (ECF No. 35) is **GRANTED.**

There are no remaining claims or parties herein.

The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and to close the case.


IT IS SO ORDERED.


DATED: February 28, 2018, Honolulu, Hawaii.

Helen Gillmor
United States District Judge

Gary J. Martinez v. Sean Stackley, Secretary of the Navy; Jamie K. Kalowsky, CMDR, Captain Pearl Harbor Navy Shipyard and Intermediate Maintenance Facility, Civ. No. 16-00475 HG-RLP; **ORDER GRANTING MOTION FOR DISMISSAL AND SUMMARY JUDGMENT OF DEFENDANTS SEAN STACKLEY, SECRETARY OF THE NAVY AND JAMIE K. KALOWSKY (ECF No. 35)**